UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 22-10006-WGY-MBB |
| | ) | |
| KRIS BORTNOVSKY and | ) | |
| RYAN SHAPIRO, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**GOVERNMENT'S PARTIAL OPPOSITION TO DEFENDANT RYAN SHAPIRO'S
MOTION FOR LEAVE TO PROCEED *EX PARTE* AND UNDER SEAL
ON HIS MOTION FOR RULE 17(c) SUBPOENA**

The government respectfully submits this partial opposition to Defendant Ryan Shapiro's motion to proceed under seal and on an *ex parte* basis on his motion for a pre-trial subpoena pursuant to Fed. R. Crim. P. 17(c). Dkt. 64. As set forth below, the government does not oppose Shapiro's motion to the extent he seeks leave to file his briefing (and the proposed subpoena itself) *ex parte* and under seal. The government respectfully requests, however, that in the event the Court authorizes the issuance of the subpoena, it order that any documents produced by the third-party recipient in response to the subpoena be subject to inspection by the government and the defense, as Rule 17 contemplates.

**ARGUMENT**

I.     Applicable Law

Rule 17 provides that a subpoena may "command the person to whom it is directed to produce the books, papers, documents or other objects designated therein . . . at a time prior to the trial or prior to the time when they are to be offered in evidence," and that the court "may upon their production permit the books, papers, documents or objects or portions thereof to be inspected

by the parties and their attorneys." Fed. R. Crim. P. 17(c). As the Supreme Court has made clear, the rule was "not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698–99 (1974) (further citation omitted). Rather, "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id.* Accordingly, in seeking a Rule 17 subpoena, "the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at 699–700; *see also id.* at 700 (noting that party seeking a Rule 17 subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity").

Courts are divided on whether parties should be permitted to obtain Rule 17 subpoenas on an *ex parte* basis. While courts in this district have, from time-to-time, permitted such a procedure, Judge Zobel has noted "the pit falls" of *ex parte* subpoena proceedings. *See United States v. Decologero*, Crim No. 01-10373, 2006 WL 83471, at *2 (D. Mass. Jan. 13, 2006). Moreover, a "majority of courts have refused to allow an *ex parte* application under Rule 17(c)." *United States v. Stewart*, No. Crim. A. 96-583, 1997 WL 103700, at *1 (E.D. Pa. Mar. 4, 1997); *see also United States. v. Fulton*, Crim. No. 13-261-SRC, 2013 WL 4609502, at *1 (D.N.J. Aug. 29, 2013) (noting that "the majority of courts examining the rule in their observation that Rule 17(c)'s plain language does not contemplate an *ex parte* procedure"); *United States v. Bradley*, Crim. No. 09-40068-GPM, 2011 WL 1102837, at *3 (S.D. Ill. Mar. 23, 2011) (same). Indeed, in *United States v. Beckford*, a case on which the defendant relies for the proposition that motions for Rule 17

subpoenas may be submitted and considered *ex parte*, the court found that such proceedings should occur "only in exceptional circumstances," and that "[o]rdinarily, *ex parte* procedure will be unnecessary and thus inappropriate."  964 F. Supp. 1010, 1030 (E.D. Va. 1997).  Accordingly, in that case, the court found that "a party seeking to proceed *ex parte* will have to meet a heavy burden to proceed in that fashion." *Id.* at 1031.  *See also United States v. Ventola*, No. CR 15-10356-DPW, 2017 WL 2260065, at *2 (D. Mass. May 23, 2017) (Bowler, J.) (granting motion to quash and observing "that use of the *ex parte* process is generally not favored by this court").[1]

II.    The Defendant Has Failed to Meet His "Heavy Burden" of Demonstrating
       Why the Subpoena Returns Should Not Be Subject to Inspection

Rule 17 contemplates, by its plain terms, that the Court may order documents produced in response to a subpoena "to be inspected by the parties and their attorneys."  Fed. R. Crim. P. 17(c). While it is true, as the defendant contends, that the rule is permissive, Dkt. 64 at 4, the cases the defendant himself cites make clear that shielding subpoenaed documents from an opposing party

---

[1] Shapiro compares a defendant's ability to employ Rule 17 on an *ex parte* basis to the government's ability to employ the grand jury process.  *See* Dkt. 64 at 2 ("Rule 17(c) does not require disclosure of the subpoena or the even the identities of the subpoenaed entities to the government, just as, in reverse, the government has no duty to provide advance notice to the defendant of who they subpoena, either pre-indictment, or even post-indictment."). The comparison is inapt.  First, the grand jury is an investigative body; Rule 17 subpoenas are, by contrast, *not* investigative tools.  *Compare, e.g., United States v. Calandra*, 414 U.S. 338, 343–44 (1974) (noting that a grand jury proceeding "is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged."), *with United States v. Castro-Ward*, 385 F. Supp. 3d 156, 158 (D.P.R. 2018) ("Courts invariably define Rule 17 in the negative: subpoenas are not discovery devices or investigatory tools.") (further citations omitted).  Second, and in any event, the government is not permitted to employ grand jury subpoenas as a trial preparation device post-indictment. *See, e.g., In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985) ("The law is settled in this circuit and elsewhere that it is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial.") (further citation and internal alterations omitted).

is typically "unnecessary" and "inappropriate," and that the defendant must meet a "heavy burden" to justify such a one-sided practice. *See United States vs. Litos*, Crim. No. 2:12-175, 2014 WL 806022, at *5 (N.D. Ind. Feb. 24, 2014) ("It is the majority view of the courts that the structure of Rule 17 requires the court to allow both parties to view the documents returned under the subpoena.").

Here, the government does not object to Shapiro's effort to apply for a subpoena on an *ex parte* basis. Accordingly, to the extent the defendant is concerned that his application, or even the subpoena itself, would "divulge trial strategy, witness lists or attorney work-product," Dkt. 64 at 1, there is no risk. The government disclaims any interest in seeing those materials.

At the same time, Shapiro makes no effort to meet his "heavy burden" of justifying why the subpoena returns themselves should be shrouded in the disfavored secrecy of the *ex parte* process. He contends, without more, that simply "seeing the documents" would provide the government with "a window into the legal theories and trial strategies of defense counsel." *Id.* (quoting *United States v. Colburn*, Crim. No. 19-10080-NMG, 2020 WL 6566508, at *4 (D. Mass. Nov. 9, 2020)). But this conclusory assertion is little more than rhetoric, and Shapiro does not explain *how* viewing an undifferentiated mass of pre-existing documents produced by a third party will give away defense thought processes or trial strategy. That is unsurprising, because the contention is meritless. *Cf., e.g.*, *United States v. Sellers*, 275 F.R.D. 620, 625 (D. Nev. 2011) (permitting defendant to apply for subpoena *ex parte*, but ordering that subpoenaed documents be made available to the government, and noting, "it does not follow that the defendant is entitled to strategic advantage or tactical surprise").

As an initial matter, the documents Shapiro seeks might, or might not, support whatever defenses he pursues. It would be difficult, if not impossible, for the government to discern, from

whatever materials are produced in response to Shapiro's subpoena, whether, and if so how, he intends to use any of them at trial. Indeed, Shapiro himself cannot know, in advance of receiving the documents, what they show. And the mere production of documents by a third party does not reveal anything about what, if any, information within those documents the defense might find useful. The government will have no way of knowing which, if any, of the documents the defendant intends to use at trial (save for any he later marks as exhibits), what inferences defense counsel may draw from them, or which documents defense counsel believes support or undermine Shapiro's defense strategy.

Moreover, to the extent any of the documents are helpful to the defendant, and he decides to use them as exhibits in his case-in-chief, he must produce them to the government anyway, pursuant to Rule 16, as he concedes. Likewise, to the extent he seeks by way of his proposed subpoena to obtain materials for the purpose of impeaching prospective government witnesses, Rule 17 is an inappropriate vehicle. *See Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); *United States v. Poimboeuf*, 331 F.R.D. 478, 480 (W.D. La. 2019) ("Materials that have no potential value other than for purposes of impeachment are not subject to subpoena under Rule 17(c)."). In any event, because the trial in this matter is still nearly seven months away, and the government has not even identified any witnesses, any concern about divulging witness impeachment strategies is speculative and premature. Finally, to the extent the documents are *not* helpful to the defense, and Shapiro decides not to use them at trial—either as exhibits in his case-in-chief or for purposes of impeachment—he cannot claim that producing them to the government would divulge his trial strategy.

## **CONCLUSION**

For the foregoing reasons, the government does not oppose Shapiro's motion to the extent he seeks to apply for a Rule 17 subpoena *ex parte* and under seal, but respectfully requests that, to the extent the motion is granted, the Court provide both parties with an opportunity to inspect any documents produced in response.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: */s/ Stephen E. Frank*
STEPHEN E. FRANK
SETH B. KOSTO
Assistant U.S. Attorneys

Date:   October 17, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Stephen E. Frank*
STEPHEN E. FRANK
Assistant U.S. Attorney

October 17, 2022